**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **REINALDO MORENO-RODRIGUEZ,**<br><br>***Petitioner*,**<br>**v.**<br><br>**WARDEN,** *in his or her official capacity* as Warden of the ERO El Paso Camp East Montana Detention Center;<br>**MARY DE ANDA-YBARRA,** *in her official capacity* as Field Office Director of the ICE El Paso Field Office of Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement;<br>**DAVID J. VENTURELLA,** *in his official capacity* as Senior Official Performing the Duties of the Director of Immigration and Customs Enforcement;<br>**MARKWAYNE MULLIN,** *in his official capacity* as Secretary, U.S. Department of Homeland Security; and<br>**TODD BLANCHE,** *in his official capacity* as Attorney General of the United States,<br><br>***Respondents*.** | § § § § § § § § § § § § § § § § § § § § § § § § | **EP-26-CV-00084-DCG** |

**ORDER GRANTING PETITION**

Petitioner Reinaldo Moreno-Rodriguez ("Petitioner") challenges his immigration detention while the Government facilitates his removal from the United States.[1] Among other things, Petitioner argues that the amount of time he's spent in detention—coupled with uncertainty regarding when (or whether) he'll be removed from the country—requires his

---

[1] *See generally* Am. Pet., ECF No. 12.

release.[2] Respondents, however, insist that Petitioner's continued detention is a product of Petitioner's refusal to comply with removal.[3]

For the following reasons, the Court **GRANTS** the Petition and **ORDERS** Respondents to release Petitioner from custody.

## I. INTRODUCTION

Petitioner is a Cuban citizen.[4] On June 27, 2011, an Immigration Judge ("IJ") ordered Petitioner removed from the United States.[5] The Government, however, couldn't remove Petitioner at that time because:

(1) Cuba wouldn't accept Petitioner; and

(2) the United States Government hadn't identified a third country—that is, a country other than Cuba—that would accept Petitioner either.[6]

After determining that there was "a lack of significant likelihood of [Petitioner's] removal in the foreseeable future," the Government released him under an order of supervision ("OSUP") on July 11, 2016.[7]

---

[2] *See generally id.*

[3] *See generally* Resp., ECF No. 14; Resp'ts' Status Update, ECF No. 27.

[4] *See* Am. Pet. at 3 ("Petitioner . . . is a citizen of Cuba . . . ."); Resp. at 1 ("[Petitioner] is a native and citizen of Cuba.").

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system, rather than the cited document's internal pagination.

[5] *See* Resp. at 2.

[6] *See id.* at 3.

[7] *Id.*

Nearly a decade later, on June 25, 2025, the Government revoked Petitioner's OSUP and took him back into custody.[8] Thereafter, the Government attempted to remove Petitioner to Mexico on at least three separate occasions.[9] According to Respondents, however, Petitioner has repeatedly refused to comply with the Government's removal efforts,[10] and there is currently "no newly scheduled date" for Petitioner's removal.[11]

Ordinarily, post-removal-order detention cases turn on whether an alien's removal is reasonably foreseeable—in which case 8 U.S.C. § 1231(a)(6) authorizes detention.[12] Here, the Government concedes that it doesn't have a timeline for Petitioner's removal,[13] which makes for straightforward determinations that:

(1) removal is not reasonably foreseeable; and (thus)

(2) detention is not authorized by 8 U.S.C. § 1231(a)(6).[14]

The complicating factor in this case is Petitioner's refusal to comply with removal to Mexico. In some instances, 8 U.S.C. § 1231(a)(1)(C) authorizes the Government to detain aliens

---

[8] *See id.*

[9] *See id.* (indicating that the Government attempted to remove Petitioner to Mexico on September 2, 2025 and November 4, 2025); Resp'ts' Status Update at 1 (indicating that the Government attempted to remove Petitioner to Mexico on August 5, 2026).

[10] *See* Resp. at 3 (indicating that Petitioner refused to comply with the Government's attempts to remove him on September 2, 2025 and November 4, 2025); Resp'ts' Status Update at 1 (indicating that Petitioner refused to comply with the Government's attempt to remove him on August 5, 2026).

[11] Resp'ts' Status Update at 2.

[12] *See, e.g.*, *Khoury v. Garite*, No. EP-25-CV-00577-DCG, 2026 WL 1179822 (W.D. Tex. Apr. 21, 2026).

[13] *See supra* note 11 and accompanying text.

[14] *See infra* Section II.C.2.

who fail to comply with removal orders.[15] That, of course, raises the question of whether 8 U.S.C. § 1231(a)(1)(C) authorizes Petitioner's detention here.

As the Court will now explain, the answer to that question is "No." Although the Government argues that Petitioner has thwarted his own removal,[16] it hasn't taken the necessary steps to detain Petitioner under the authority of 8 U.S.C. § 1231(a)(1)(C).[17] And because Petitioner's removal is not reasonably foreseeable, 8 U.S.C. § 1231(a)(6) doesn't authorize detention either.[18] The Court will therefore order Petitioner's release.

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241, a person in immigration detention can challenge detention as unlawful by filing a petition for a writ of habeas corpus.[19] To prevail, the petitioner must show by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."[20]

---

[15] *See infra* Section II.B.3.

[16] *See generally* Resp'ts' Status Update.

[17] *See infra* Section II.C.1.c.

[18] *See infra* Section II.C.2.

[19] 28 U.S.C. § 2241(c); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001) (citing 28 U.S.C. § 2241(c)(3)).

[20] *See* 28 U.S.C. § 2241(c); *see also, e.g.*, *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (first quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); and then citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)).

## B. Relevant Authorities

### 1. 8 U.S.C. § 1231(a)(6)

8 U.S.C. § 1231(a) governs detention of aliens who are ordered removed from the country.[21] Once a removal order becomes final, Section 1231(a)(1) provides the Government ninety days to secure removal.[22] This is known as the "removal period," during which detention is mandatory under the statute's plain text.[23]

As this case illustrates, though, not all aliens are removed during the removal period. Once the ninety-day removal period expires, Section 1231(a)(6) authorizes the Government to continue detaining certain aliens, including those who (like Petitioner) are removable under Section 1227(a)(2).[24] Notably, Section 1231(a)(6) doesn't expressly limit how long the Government may detain the specified classes of aliens:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, ***may be detained beyond the removal period*** and, if released, shall be subject to . . . terms of supervision . . . .[25]

---

[21] *Zadvydas*, 533 U.S. at 682.

[22] *See* 8 U.S.C. § 1231(a)(1)(A).

[23] *See id*. at § 1231(a)(2)(A) ("During the removal period, the Attorney General ***shall*** detain the alien." (emphasis added)); *see also Zadvydas*, 533 U.S. at 683 ("After entry of a final removal order and during the 90–day removal period, however, aliens must be held in custody . . . .").

[24] *See infra* note 25.

*See also* Immigration Record, ECF No. 35-1, at 2 (indicating that the Government charged Petitioner with being removable under "237a2Aii"—*i.e.*, Section 1227(a)(2)(A)(ii)); 8 U.S.C. § 1227(a)(2)(A)(ii) (providing that "[a]ny alien who . . . is convicted of a crime for which a sentence of one year or longer may be imposed[] is deportable").

[25] *See* 8 U.S.C. § 1231(a)(6) (emphasis added).

**2. *Zadvydas v. Davis***

That doesn't mean that the Government's Section 1231(a)(6) detention authority is unlimited, though. In *Zadvydas v. Davis*, the Supreme Court considered whether Section 1231(a)(6) gives the Government unfettered discretion to decide whether and how long to continue detention.[26] There, the Government continued detaining two aliens past the removal period due to their criminal histories.[27] The Government, however, hadn't been able to find a country willing to accept either of them, which resulted in their prolonged detentions with no foreseeable end.[28]

Although the Supreme Court acknowledged that Section 1231(a)(6) doesn't expressly limit the duration of detention, it nonetheless construed the statute to contain implicit limits.[29] Specifically, the Supreme Court "detected ambiguity in the statutory phrase 'may be detained,'" concluding that "while 'may' suggests discretion, it does not necessarily mean unlimited discretion."[30] The Supreme Court further reasoned that "if Congress had meant to authorize long-term detention of unremovable aliens, it certainly could have spoken in clearer terms."[31]

---

[26] *See generally Zadvydas*, 533 U.S. 678.

[27] *See id*. at 684–86.

[28] *See id.*

[29] *See id*. at 682.

*Cf. Miller v. French*, 530 U.S. 327, 336 (2000) ("[W]here Congress has made its intent clear, 'we must give effect to that intent.'" (quoting *Sinclair Refin. Co. v. Atkinson,* 370 U.S. 195, 215 (1962))).

[30] *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018) (citing *Zadvydas*, 533 U.S. at 697).

[31] *Zadvydas*, 533 U.S. at 697.

After determining that Section 1231(a)(6) is ambiguous, the Supreme Court weighed competing interpretations of Section 1231(a)(6)'s detention authority. The Government's interpretation would have authorized indefinite detention[32]—which, according to the Supreme Court, would raise a "serious constitutional problem."[33] As the Supreme Court had previously explained, "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."[34] Applied to Section 1231(a)(6):

(1) the statute's "basic purpose" is to "assur[e] the alien's presence at the moment of removal"; and

(2) if it's unlikely that the Government will be able to remove an alien within the foreseeable future, detaining that alien under Section 1231(a)(6) wouldn't serve that purpose; so

(3) interpreting Section 1231(a)(6) to authorize the Government to detain aliens whose removals aren't foreseeable would raise serious constitutional questions.[35]

---

[32] *Id.* at 692.

[33] *Id.* at 690.

*See also Jennings*, 583 U.S. at 296 ("When 'a serious doubt' is raised about the constitutionality of an Act of Congress, 'it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'" (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932))).

[34] *Jackson v. Indiana*, 406 U.S. 715, 738 (1972) ("[D]ue process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."); *see also Zadvydas*, 533 U.S. at 690 (citing *Jackson*, 406 U.S. at 738).

[35] *Zadvydas*, 533 U.S. at 690 ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem.").

To avoid those constitutional questions, the Supreme Court construed Section 1231(a)(6) to limit detention to a "reasonable time."[36] As for what constitutes a "reasonable time," the Supreme Court determined that detention is "presumptively reasonable" for six months.[37] After that 6–month period, "if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing or release the alien."[38]

**3. 8 U.S.C. § 1231(a)(1)(C)**

A final authority to consider for the purposes of this Order is 8 U.S.C. § 1231(a)(1)(C), which provides that:

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.[39]

To invoke Section 1231(a)(1)(C), regulations require the Government to "serve the alien with a Notice of Failure to Comply" that advises the alien of:

(1) "the provisions of [Section 1231(a)(1)(C)]";

---

[36] *Id.* at 689.

[37] *Id*. at 701.

[38] *Jennings*, 583 U.S. at 296 (quoting *Zadvydas*, 533 U.S. at 701); *see also Zadvydas*, 533 U.S. at 699 ("Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute.").

[39] 8 U.S.C. § 1231(a)(1)(C).

*Cf. Lema v. INS*, 341 F.3d 853, 857 (9th Cir. 2003) (observing that "the due process concerns that motivated the Supreme Court in *Zadvydas* do not apply when an alien may have the keys to freedom in his pocket." (citation modified)); *Pelich v. INS*, 329 F.3d 1057, 1060 (9th Cir. 2003) (similar).

(2) the penalties associated with an alien's failure to comply with removal;

(3) "the circumstances demonstrating [the alien's] failure to comply with the requirements of Section 1231(a)(1)(C)"; and

(4) "an explanation of the necessary steps that the alien must take in order to comply with the statutory requirements."[40]

### C. Analysis

Respondents have raised Section 1231(a)(1)(C) and Section 1231(a)(6) as alternative authorities for Petitioner's detention.[41]

#### 1. 8 U.S.C. § 1231(a)(1)(C) doesn't authorize Petitioner's detention

The Court first considers whether Section 1231(a)(1)(C) authorizes Petitioner's detention. Preliminarily, courts are split on whether the Government may invoke that authority after the removal period expires. Section 1231(a)(1)(C) identifies the circumstances under which the removal period may be "extended."[42] Some courts construe that language to mean that Section

---

[40] 8 C.F.R. § 241.4(g)(5)(ii); *see also Alexander v. Att'y Gen. U.S.*, 495 F. App'x 274, 277 (3d Cir. 2012) (observing that "8 C.F.R. § 241.4(g)(5) addresses an alien's failure to comply with aspects of the removal process").

*See also Glushchenko v. United States Dep't of Homeland Sec.*, 566 F. Supp. 3d 693, 708 (W.D. Tex. 2021) ("[W]hen DHS determines that removal needs to be extended under § 1231(a)(1)(C), it is required to serve the alien with a Notice of Failure to Comply that explains the relevant statutes and provides an explanation of the necessary steps that the alien must take in order to comply with the statutory requirements." (citation modified)).

[41] *See* Resp'ts' Opp. Pet'r's Suppl. Br., ECF No. 23, at 2–3 (arguing that Section 1231(a)(1)(C) authorizes Petitioner's detention); Resp. at 3–5 (arguing that Section 1231(a)(6) authorizes Petitioner's detention).

[42] *See supra* note 39 and accompanying text.

1231(a)(1)(C) no longer applies after the removal period expires.[43] Others, however, have concluded just the opposite—that Section 1231(a)(1)(C) ***does*** apply in such a case.[44]

Although courts on both sides of the split ultimately consider whether an alien has thwarted their own removal such that continued detention is lawful,[45] the distinction matters because it affects the analytical framework that courts use to assess the alien's detention challenge.[46] The Court therefore first considers whether Section 1231(a)(1)(C) remains available after the removal period has expired and then addresses its application here.

**a. The Government can invoke 8 U.S.C. § 1231(a)(1)(C) after the removal period ends**

As noted above, Section 1231(a)(1)(C) contemplates continued detention for aliens who fail or refuse to assist the Government with obtaining necessary travel documentation, or who otherwise "conspire[] or act[] to prevent [their] removal."[47] For courts that apply Section 1231(a)(1)(C) in the post-removal-period context, the analytical steps for assessing whether an alien's refusal to cooperate authorizes detention are relatively straightforward. On the one hand, the Government needs to demonstrate that an alien has prevented their own removal within the

---

[43] *E.g.*, *V.R. v. ICE*, No. 1:26-CV-04279-MWJS, 2026 WL 1965908, at *7 (E.D. Cal. July 7, 2026).

[44] *See, e.g.*, *Laza Cuesta v. Warden*, No. 2:26-CV-1677-KCD-NPM, 2026 WL 2525690, at *2 (M.D. Fla. Aug. 27, 2026) (determining that Section 1231(a)(1)(C) applied where an alien refused to comply with removal decades after his removal period had expired).

[45] *Compare, e.g.*, *V.R.*, 2026 WL 1965908, at *7 (considering whether an alien acted to prevent removal as part of the *Zadvydas* analysis), *with Martinez v. Warden*, No. 3:26-CV-1399-WWB-PDB, 2026 WL 2453500, at *3–4 (M.D. Fla. Aug. 21, 2026) (considering whether an alien acted to prevent removal using a Section 1231(a)(1)(C) analysis).

[46] *See infra* notes 48–51 and accompanying text.

[47] *See* 8 U.S.C. § 1231(a)(1)(C).

meaning of Section 1231(a)(1)(C).[48] On the other, the Government needs to demonstrate that it followed the procedural steps necessary to invoke Section 1231(a)(1)(C)'s authority.[49] And if the Government shows both, detention is authorized by Section 1231(a)(1)(C), and the *Zadvydas* analysis isn't necessary.[50]

The analytical framework is comparatively less clear, however, for courts that don't apply Section 1231(a)(1)(C) after the removal period expires. That's because, without Section 1231(a)(1)(C)'s substantive and procedural edicts, there isn't an obvious way to assess how an alien's lack of cooperation fits into *Zadvydas*'s foreseeability analysis.[51]

---

[48] *See supra* note 47 and accompanying text.

[49] *See supra* note 40 and accompanying text.

*See also United States v. Gutierrez*, 443 F. App'x 898, 903 (5th Cir. 2011) ("It is 'an unremarkable proposition' that an agency must follow its own regulations." (citing cases)); *United States v. Morgan*, 193 F.3d 252, 266 (4th Cir. 1999) ("We have recognized that an agency's failure to afford an individual procedural safeguards required under its own regulations may result in the invalidation of the ultimate administrative determination.").

[50] *See, e.g.*, *Khan v. Liggins*, No. 26-CV-00088-ABA, 2026 WL 2013963, at *4 (D. Md. July 10, 2026) (concluding that Section 1231(a)(1)(C) did not authorize continued detention where the Government "d[id] not allege that they have served Petitioners with any Notices of Failure to Comply under 8 C.F.R. § 241.4(g)(5), which would be required if the non-cooperation was a true impediment to removal").

*But see Cyclewala v. Feeley*, No. 6:20-CV-06678 EAW, 2021 WL 307563, at *4 (W.D.N.Y. Jan. 29, 2021) (concluding that the fact that "[t]here [was] no indication in the record . . . that [the Government] ever served Petitioner with a Notice of Failure to Comply" "d[id] not prohibit a finding that the removal period has been extended under § 1231(a)(1)(C)").

[51] *Compare*, *e.g.*, *Andemicael v. Noem*, No. 25-CV-02999, 2026 WL 734522, at *5–6 (C.D. Cal. Feb. 12, 2026) (assessing whether an alien's refusal to board a flight was "the sole reason" that the alien hadn't been removed), *report and recommendation adopted*, 2026 WL 734588 (C.D. Cal. Feb. 20, 2026), *with Berhe v. Ducote*, No. CV 24-0407, 2024 WL 4455032, at *4 (W.D. La. Sept. 18, 2024) (assessing whether an alien had "diminished his likelihood of . . . removal" by refusing to board flights), *report and recommendation adopted*, No. CV 24-0407, 2024 WL 4453329 (W.D. La. Oct. 9, 2024).

In the undersigned Judge's view, applying Section 1231(a)(1)(C) even after the removal period ends is the more practical of the two alternatives. More importantly, though, Section 1231(a)(1)(C)'s text demands that construction.[52]

While some courts have concluded that the Government can't "extend" time periods that have already expired,[53] "[m]uch of federal law proceeds on [the] understanding" that time periods may be "extended" after they have already lapsed.[54] Indeed, as the Supreme Court has explained, extensions don't "obviously and always include a strict continuity requirement."[55] Thus, to determine how the word "extended" applies here, Section 1231(a)(1)(C) must be read "in . . . context and with a view to [its] place in the overall statutory scheme."[56]

The statutory text doesn't contain anything resembling a limitation that the Government cannot invoke Section 1231(a)(1)(C) after the removal period expires.[57] As far as the text reveals, Congress enacted Section 1231(a)(1)(C) to disincentivize aliens from refusing to comply

---

[52] *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) (explaining that "the authoritative statement [on the meaning of a statute] is the statutory text").

[53] *See, e.g.*, *Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1219 (W.D. Wash. 2006) ("[The Government] cannot rely on Section 241(a)(1)(C) to extend the removal period that expired seventeen months earlier."); *V.R.*, 2026 WL 1965908, at *7 (finding "no basis to apply § 1231(a)(1)(C) to extend or revive the removal period" after it had already expired).

[54] *HollyFrontier Cheyenne Ref., LLC v. Renewable Fuels Ass'n*, 594 U.S. 382, 390–91 (2021) (citing 28 U.S.C. § 2107(c), FED. R. CIV. P. 6(b)(1), the Consolidated Appropriations Act of 2021, Pub. L. 116–260, § 203, and the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116–136, § 2114 as examples of statutes and rules under which time periods may be extended after a deadline has lapsed).

[55] *See id.* at 392 (explaining that "the bare term 'extension'" doesn't "obviously and always include[] a strict continuity requirement").

[56] *See Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989).

[57] *See* 8 U.S.C. § 1231(a)(1)(C).

with removal.[58] It strains credulity to think that Congress intended to limit the consequences of noncompliance to the removal period—particularly considering that neither the Government's removal efforts[59] nor the criminal penalties for refusals to comply with removal[60] are limited in such a manner. Had Congress intended to limit Section 1231(a)(1)(C) to the removal period, it could have said so[61]—perhaps by requiring (as it has in other contexts) that extensions be "consecutive" or "successive."[62] The absence of any such modifying language here supports the conclusion that the removal period need not be ongoing for Section 1231(a)(1)(C) to apply.[63]

---

[58] *Lema v. I.N.S.*, 214 F. Supp. 2d 1116, 1117 (W.D. Wash. 2002) (observing that "[Section] 1231(a)(1)(C) evidences Congress' intent to permit continued detention when an alien refuses to cooperate and attempts to thwart the [Government's] efforts to deport him"), *aff'd sub nom. Lema v. I.N.S.*, 341 F.3d 853 (9th Cir. 2003).

*See also Quarles v. St. Clair*, 711 F.2d 691, 704 (5th Cir. 1983) ("As in all cases of statutory construction, our task is to interpret the words of [the statute] in light of the purposes Congress sought to serve." (quoting *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 608 (1979))).

[59] *See generally* Resp'ts' Status Update (evidencing that the Government has continued to work towards Petitioner's removal despite his removal period expiring nearly 15 years ago).

[60] *See generally* 8 U.S.C. § 1253(a)(1)(B) (penalizing aliens who refuse to comply with removal without temporal limitation).

[61] *See M & K Emp. Sols., LLC v. Trs. of IAM Nat'l Pension Fund*, 608 U.S. 264, 274 (2026) ("We generally do not read limitations into statutes that do not appear in their text." (citing *Romag Fasteners, Inc. v. Fossil Inc.*, 590 U.S. 212, 215 (2020))).

[62] *See HollyFrontier Cheyenne Ref., LLC*, 594 U.S. at 392 (citing various statutes to illustrate that, "[o]n occasion, . . . Congress requires 'extensions' to be 'consecutive' or 'successive'").

[63] *See id.* (concluding that the "absence of any parallel modifying language in [a] statute . . . supplies one clue that continuity is not required").

Fifth Circuit case law supports that conclusion. Although this Court isn't aware of any binding precedent, a series of unpublished[64] decisions suggest that the Fifth Circuit applies Section 1231(a)(1)(C) in the post-removal-period context. Take *Sanni-Shittu v. Lynch*, for example.[65] There, like here, an alien challenged his post-removal-order detention on the grounds that his removal wasn't reasonably foreseeable.[66] Like here, the Government argued that the alien's failure to cooperate with the Government's removal efforts was the reason he remained in detention.[67] And like here, the conduct that the Government argued justified continued detention took place well after the 90-day removal period had already expired.[68] When presented with the issue on appeal, the Fifth Circuit cited Section 1231(a)(1)(C) and agreed that the alien had "acted to prevent his removal."[69]

---

[64] *Cf.* 5TH CIR. R. 47.5 (establishing that unpublished Fifth Circuit decisions are not precedential).

*But see Autry v. Ahern Rentals, Inc.*, No. 3:19-CV-00154, 2023 WL 1769208, at *7 (W.D. Tex. Feb. 3, 2023) (Guaderrama, J.) (explaining the undersigned Judge's preference to "follow[ ] unpublished Fifth Circuit decisions because they indicate how the Fifth Circuit might rule in a future, precedential opinion").

[65] 623 F. App'x 279 (5th Cir. 2015) (unpublished).

[66] *See* Memorandum and Order at 6, *Sanni-Shittu v. Holder*, No. 4:14-CV-1057 (S.D. Tex. Sept. 30, 2014), ECF No. 17.

[67] *See id.* at 7–9.

Specifically, the Government produced evidence that the Nigerian government wouldn't accept the alien (a Nigerian citizen) until either the alien's habeas case had concluded or the alien requested travel documents. *See id.* at 8. The Government also produced evidence that the alien filed his habeas petition to thwart removal, and that he refused to request travel documents. *See id.* at 7–9.

[68] *Compare id.* at 3 (indicating that the alien's removal order became final on November 20, 2013), *with id.* at 7 (determining that the alien "sought to prevent his removal" beginning "April 10 or 16, 2014").

[69] *See Sanni-Shittu*, 623 F. App'x at 279.

Other cases demonstrate that the Fifth Circuit applies Section 1231(a)(1)(C) in cases that pose *Zadvydas* concerns.[70] That's notable because *Zadvydas* considered whether continued detention was authorized by Section 1231(a)(6),[71] which only applies after the removal period expires.[72] In other words, if the Government couldn't invoke Section 1231(a)(1)(C) after the removal period expires, it wouldn't have made sense for the Fifth Circuit to apply Section 1231(a)(1)(C) in those cases.[73]

---

[70] *Gonzalez v. Gillis*, No. 20-60547, 2022 WL 1056099, at *1 (5th Cir. Apr. 8, 2022) (unpublished) (determining that a petitioner "hindered the effectuation of his removal" and "failed to show that there was no significant likelihood of his removal in the reasonably foreseeable future if he cooperated [with removal]" (first citing 8 U.S.C. § 1231(a)(1)(C), and then citing *Zadvydas*, 533 U.S. at 701)); *Hook v. Lynch*, 639 F. App'x 229, 230 (5th Cir. 2016) (unpublished) (similar); *Blankson v. Mukasey*, 261 F. App'x 758, 759 (5th Cir. 2008) (unpublished) (similar).

[71] *See generally Zadvydas*, 533 U.S. 678.

*See also Glushchenko*, 566 F. Supp. at 706 (observing that "*Zadvydas* interpreted § 1231(a)(6) specifically"); *Anadji v. Keisler*, No. CV B-07-184, 2008 WL 11388565, at *5 (S.D. Tex. June 26, 2008) ("The *Zadvydas* Court considered 8 U.S.C. § 1231(a)(6), the provision that allows for post-removal period detention of certain aliens, and not § 1231(a)(1)(C)."), *report and recommendation adopted*, No. CV B-07-184, 2008 WL 11388548 (S.D. Tex. July 15, 2008).

[72] *See* 8 U.S.C. § 1231(a)(6) (providing that, under certain circumstances, aliens "may be detained ***beyond the removal period***" (emphasis added)).

[73] Although, in those cases, the Fifth Circuit didn't expressly state that Section 1231(a)(1)(C) applies after the removal period ends, appellate authority can be "found in what the court necessarily decided in order to reach a result." *See Popeko v. United States*, 513 F.2d 771, 773 (5th Cir. 1975). *But see Webster v. Fall*, 266 U.S. 507, 511 (1925) (explaining that issues that "lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute binding precedents." (citing cases)).

To summarize, the interpretive current flows towards one conclusion: that Section 1231(a)(1)(C) applies after the removal period expires.[74]

**b. Section 1231(a)(1)(C) and Section 1231(a)(6) require independent analyses**

Having concluded that Section 1231(a)(1)(C)—like Section 1231(a)(6)—may apply after the removal period expires,[75] the Court now considers how to evaluate a detention challenge where (as here) the Government invokes both provisions.

Section 1231(a)(1)(C) and Section 1231(a)(6) "present two distinct statutory analyses."[76] For that reason, courts often assess the two authorities independently of one another, using a two-step framework. At step one, courts consider whether the Government has demonstrated that Section 1231(a)(1)(C) authorizes detention.[77] If so, the alien's detention is lawful, and the statutory inquiry ends.[78] If, however, the Government ***has not*** demonstrated that Section

---

[74] The regulations that implement Section 1231(a)(1)(C) cut both ways. On the one hand, 8 C.F.R. § 241.4(g)(5) provides that the Government may invoke Section 1231(a)(1)(C) "if the removal period has not yet expired." *See* 8 C.F.R. § 241.4(g)(5)(iii). On the other, that same regulation goes on to instruct that the Government's failure to invoke Section 1231(a)(1)(C) within the removal period "shall not have the effect of excusing the alien's conduct." *See* 8 C.F.R. § 241.4(g)(5)(iv). While regulations don't control the Court's statutory construction, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024), the Court concludes that 8 C.F.R. § 241.4(g)(5) generally reinforces that the consequences of an alien's refusal to cooperate don't cease just because the removal period has expired.

[75] *See supra* Section II.B.2.

[76] *Anadji*, 2008 WL 11388565, at *5.

[77] *See, e.g.*, *Zehra v. Noem*, No. CV H-25-5625, 2026 WL 2271347, at *2 (S.D. Tex. Aug. 6, 2026) (denying petition "because the record establishe[d] that [the alien's] detention is authorized under § 1231(a)(1)(C)," meaning that "*Zadvydas*'s burden-shifting analysis [wa]s not necessary").

*See also Diouf v. Mukasey*, 542 F.3d 1222, 1231 n.4 (9th Cir. 2008) ("[I]t is the burden of the government to document the conduct that extends the removal period under § 1231(a)(1)(C)."); *see also Ka v. Bureau of Immigr. & Customs Enf't*, No. CV B-07-197, 2008 WL 11462867, at *11 (S.D. Tex. June 24, 2008) (similarly placing the burden on the Government to invoke Section 1231(a)(1)(C)).

[78] *See supra* note 77.

1231(a)(1)(C) authorizes detention, courts then move on to step two—at which they assess whether Section 1231(a)(6) independently authorizes detention under *Zadvydas*.[79] The Court finds this framework both administrable and consistent with Fifth Circuit case law, which suggests that a full-fledged *Zadvydas* analysis isn't necessary where Section 1231(a)(1)(C) authorizes detention.[80] The Court therefore adopts this framework and applies it below.

### c. The Government hasn't followed the procedures necessary to invoke 8 U.S.C. § 1231(a)(1)(C)

The Court now turns to whether Respondents have properly invoked Section 1231(a)(1)(C). As explained above, serving an alien with a Notice of Failure to Comply is a prerequisite to invoking that authority.[81] The record, however, contains no indication that the Government served such a Notice. If anything, Respondents' most recent filing suggests the opposite—stating that "***if*** Petitioner refuses to comply with . . . removal, [the Government] ***may*** document the refusal as a failure to comply."[82]

Simply put, even if Petitioner's refusal to accept removal to Mexico was an "act to prevent removal" within the meaning of Section 1231(a)(1)(C)—an issue that the Court doesn't

---

[79] *See, e.g.*, *Martinez*, 2026 WL 2453500, at *3–4 (granting petition where the Government hadn't properly invoked Section 1231(a)(1)(C), and there was no "significant likelihood that [the alien] w[ould] be removed in the reasonably foreseeable future").

[80] *See Gonzalez*, 2022 WL 1056099, at *1 ("The district court determined that Gonzalez's own failure to cooperate with removal efforts tolled the time period allowed for his removal and precluded a *Zadvydas* showing that there was no significant likelihood of his removal in the reasonably foreseeable future. . . . The district court did not err in determining that his conflicting information about his identity has hindered the effectuation of his removal, and that he has failed to show that there was no significant likelihood of his removal in the reasonably foreseeable future if he cooperated." (citation modified)); *Sanni-Shittu*, 623 F. App'x at 279 (similar); *Hook*, 639 F. App'x at 230 (similar); *Blankson*, 261 F. App'x at 759 (similar).

[81] *See supra* note 40 and accompanying text.

[82] *See* Velez Decl., ECF No. 27-1, at 2.

decide here[83]—the Government hasn't followed the regulatory process to invoke that authority.[84] Section 1231(a)(1)(C) therefore doesn't authorize Petitioner's continued detention.[85]

**2. 8 U.S.C. § 1231(a)(6) doesn't authorize Petitioner's detention either**

Because the Government didn't properly invoke Section 1231(a)(1)(C), the Court will consider whether Section 1231(a)(6) authorizes Petitioner's detention.[86]

**a. Whether removal is reasonably foreseeable for *Zadvydas* purposes doesn't turn on whether an alien cooperates with removal efforts**

Before answering that question, however, the Court needs to determine how (if at all) Petitioner's alleged refusal to comply with removal to Mexico factors into Section 1231(a)(6)'s *Zadvydas* analysis. Recall that *Zadvydas* places the burden on the alien to show "good reason" to believe that removal isn't reasonably foreseeable.[87] Some courts have concluded that *Zadvydas*'s use of "good reason" requires courts to consider not just ***whether*** removal is reasonably foreseeable, but also ***why*** (or, more precisely, why not).[88]

---

[83] There is a split of authority on whether an alien's refusal to accept removal to Mexico allows the Government to invoke Section 1231(a)(1)(C). *Compare, e.g.*, *Gaceran-Jimenez v. Marin*, No. 5:26-CV-01973-BFM, 2026 WL 2262177, at *4 (C.D. Cal. Aug. 5, 2026) (concluding that an alien's refusal to affirmatively accept removal to Mexico "does not constitute noncooperation of a kind that would trigger a suspension of the removal period"), *with Milian Martin v. Warden*, No. 2:26-CV-2346-KCD-NPM, 2026 WL 2640671, at *2 (M.D. Fla. Sept. 8, 2026) (concluding just the opposite).

[84] *See Gutierrez*, 443 F. App'x at 903 ("It is 'an unremarkable proposition' that an agency must follow its own regulations." (citing cases)); *see also Cerda-Espinosa v. Bondi*, 830 F. Supp. 3d 567, 584–85 (W.D. Tex. 2026) ("For re-detention to be constitutional, the government must have complied with both the applicable statutory provisions and its own regulations." (citing *United States v. Caceres*, 440 U.S. 741, 760 (1979))).

[85] *See, e.g.*, *Khan*, 2026 WL 2013963, at *4.

[86] *See supra* notes 36–38 and accompanying text.

[87] *Zadvydas*, 533 U.S. at 701.

[88] *See, e.g.*, *Anadji*, 2008 WL 11388565, at *5 (asserting that "an alien often cannot show 'good reason' under *Zadvydas* when the alien is not complying with the government's removal efforts").

The undersigned Judge respectfully disagrees. *Zadvydas*'s core holding is that Section 1231(a)(6) doesn't authorize detention where removal isn't reasonably foreseeable.[89] Although the Supreme Court placed the burden on the alien to show "good reason" to believe that removal isn't reasonably foreseeable,[90] the Court understands that requirement as establishing the alien's initial burden of production—not as altering the meaning of "reasonably foreseeable."[91] That understanding is reinforced by the Supreme Court's formulations of Section 1231(a)(6)'s scope, none of which suggests that reasonable foreseeability turns on an alien's cooperation with removal:

- "[W]e conclude that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."[92]
- "[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."[93]

---

[89] *See infra* notes 92–94 and accompanying text.

[90] *See Zadvydas*, 533 U.S. at 701.

[91] It likewise appears that the Fifth Circuit treats "good reason" as establishing the alien's initial burden of production. *See Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006) (concluding that "conclusory statements suggesting that [the alien] will not be immediately removed" are insufficient to carry the alien's initial burden under *Zadvydas*); *see also Fazel v. Lyons*, No. 5:26-CV-00692, 2026 WL 1664099, at *4 (S.D. Tex. June 9, 2026) ("As established in [*Andrade v. Gonzales*], a petitioner must show more than conclusory statements to establish good reason." (citing *id.*)).

*But see Roach v. Holder*, 344 F. App'x 945, 946 (5th Cir. 2009) (unpublished) (impliedly suggesting that an alien's acts to prevent removal might bear on whether an alien can meet their initial burden under *Zadvydas*). *Roach* and related unpublished decisions may suggest that an alien's lack of cooperation can bear on the showing required under *Zadvydas*. *See id.*; *see also, e.g.*, *Gonzalez*, 2022 WL 1056099, at *1 (unpublished). But those decisions do not address the issue presented here: whether an alien's cooperation is an independent element of *Zadvydas*'s reasonable-foreseeability analysis when the Government hasn't properly invoked Section 1231(a)(1)(C).

[92] *Zadvydas*, 533 U.S. at 699.

[93] *Id.* at 699–700.

- "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."[94]

It also bears mentioning that, although Section 1231(a)(6) contemplates detention for aliens who are "unlikely to comply with the order of removal,"[95] *Zadvydas* nonetheless limits that authority to circumstances in which removal is reasonably foreseeable.[96] Kestutis Zadvydas himself was deemed a flight risk—and, thus, unlikely to comply with his removal order.[97] Yet, applying the Supreme Court's guidance on remand, the Fifth Circuit ultimately held that Section 1231(a)(6) didn't authorize his continued detention.[98]

Accordingly, the Court concludes that an alien's cooperation (or lack thereof) doesn't itself determine whether removal is reasonably foreseeable for *Zadvydas* purposes. If the Government contends that an alien's lack of cooperation authorizes continued detention, it may invoke Section 1231(a)(1)(C).[99] If it contends that detention is authorized because removal is reasonably foreseeable, it may invoke Section 1231(a)(6).[100] But because Section 1231(a)(1)(C)

---

[94] *Id.* at 701.

*Cf. Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 373 (2023) ("The language of an opinion is not always to be parsed as though we were dealing with language of a statute. Instead, we emphasize, our opinions dispose of discrete cases and controversies and they must be read with a careful eye to context." (citation modified)).

[95] 8 U.S.C. § 1231(a)(6).

[96] *See supra* notes 92–94 and accompanying text.

[97] *See Zadvydas v. Underdown*, 185 F.3d 279, 288 (5th Cir. 1999) (indicating that the Government determined Kestutis Zadvydas to be a flight risk).

[98] *Zadvydas v. Davis*, 285 F.3d 398, 404 (5th Cir. 2002).

[99] *See supra* notes 39–40 and accompanying text.

[100] *See supra* notes 24–25 & 36–38 and accompanying text.

and Section 1231(a)(6) call for distinct analyses,[101] the Court won't construe either provision in a manner that collapses the analyses into one another.[102]

With that, the Court proceeds to the *Zadvydas* analysis.

**b. Petitioner's detention is not presumptively reasonable**

*Zadvydas* first requires the Court to determine whether Petitioner's detention is presumptively reasonable.[103] This Court previously concluded that *Zadvydas*'s six-month, presumptively reasonable detention period runs continuously from the date on which a removal order becomes final—irrespective of whether the alien spends all or some of those six months in detention.[104]

Here, Petitioner's removal order became final on June 27, 2011,[105] meaning that his detention under Section 1231(a)(6) was presumptively reasonable through December 27, 2011. That six-month period has long since passed, so Petitioner's detention is not presumptively reasonable.

---

[101] *See Anadji*, 2008 WL 11388565, at *5.

[102] *Cf. Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1068 (Fed. Cir. 2016) (declining to "collapse . . . two very different analyses into one" in a non-immigration context); *U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 940 n.6 (10th Cir. 2008) (explaining that "courts should exercise care not to confuse [distinct] analytic frameworks").

[103] *See supra* notes 36–38 and accompanying text.

[104] *See Khoury*, 2026 WL 1179822, at *7–8 (concluding that "whether detention is presumptively reasonable must depend on when the removal order becomes final—not how long an alien has spent in detention").

[105] *See* Am. Pet. at 4.

**c. Petitioner's removal is not reasonably foreseeable**

Because Petitioner's detention isn't presumptively reasonable, the Court must consider whether Petitioner's removal is reasonably foreseeable. Here, Petitioner bears the initial burden of providing good reason to believe that there is ***not*** a significant likelihood of removal in the reasonably foreseeable future.[106] While "'[g]ood reason' is not an onerous standard,"[107] it requires more than just "conclusory statements suggesting that [an alien] will not be immediately removed."[108] If Petitioner carries his burden, the burden then shifts to Respondents to rebut Petitioner's showing.[109]

***i. Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future***

Petitioner carried his burden. He notes that over fifteen years have passed since he was ordered removed, yet the Government still hasn't been able to remove him to his home country

---

[106] *See supra* note 38 and accompanying text.

Some courts have concluded that where (as here) the Government re-detains an alien after revoking the alien's release, 8 C.F.R. § 241.13(i)(2) applies and places the initial burden on ***Respondents*** to show that such a likelihood of removal does exist. *See, e.g.*, *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("[U]pon revocation of supervised release, it is the [Government's] burden to show a significant likelihood that the alien may be removed."); *accord Yan-Ling X. v. Lyons*, 813 F. Supp. 3d 1157, 1164 (E.D. Cal. 2025).

The Court need not resolve which burden-shifting framework applies to *Zadvydas* claims involving re-detention—even if *Zadvydas*'s burden-shifting framework (*i.e.*, the framework that is less favorable to Petitioner) applied, Petitioner's continued detention is unreasonable and not authorized by Section 1231(a)(6).

[107] *See Mogos v. Thompson*, No. 5:26-CV-0740-JKP, 2026 WL 475079, at *4 (W.D. Tex. Feb. 13, 2026).

[108] *Andrade*, 459 F.3d at 543–44.

[109] *See supra* note 38 and accompanying text.

of Cuba.[110] He also notes that he rejected removal to Mexico under the Government's "CVNH" program,[111] and that the Government has not "presented [him] with any travel-document related documents" that would pave the way for his removal to another third country.[112]

Although Petitioner has now been detained for ***nearly fifteen months***,[113] there is no indication that the Government currently has a viable path to removing him. These circumstances provide good reason to believe that there isn't a significant likelihood that the Government will remove Petitioner in the reasonably foreseeable future.[114]

#### ***ii. Respondents have failed to rebut Petitioner's showing***

Respondents, for their part, offer little to rebut Petitioner's assertion that his removal isn't foreseeable. Rather, they insist that Petitioner's detention is lawful because his refusal to cooperate is the reason that he remains in detention.[115] But as the Court explained above, if the

---

[110] *See* Am. Pet. at 14.

[111] *See generally* Pet'r's Suppl. Br., ECF No. 20 (indicating that Petitioner refused removal under the CVNH program); Resp'ts' Status Update (similar).

*Cf. Pablo Pablo v. Venturella*, No. EP-25-CV-00566-DCG, 2026 WL 2294407, at *4 (W.D. Tex. Aug. 7, 2026) (observing that, under the CVNH program, "Mexico will not accept someone who does not agree to go").

[112] *See* Pet'r's Suppl. Br. at 4.

[113] *See* Am. Pet. at 4 (indicating that the Government detained Petitioner on June 25, 2025).

[114] *See, e.g.*, *Suarez v. Chestnut*, No. 1:26-CV-05147 (EJD), 2026 WL 2547116, at *2 (E.D. Cal. Aug. 28, 2026) (concluding, under similar circumstances as this case, that "the fact that [an alien] d[id] not consent to his removal to Mexico demonstrate[d] that there [wa]s no significant likelihood of removal in the reasonably foreseeable future"); *Khoury*, 2026 WL 1179822, at *10 (determining that a petitioner carried his burden where he showed that the "removal process is in virtually the same place as it was" decades prior); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 722–23 (W.D. Wash. 2025) (determining that a petitioner carried his burden where "the process for procuring travel documents . . . continue[d] to be uncertain and protracted").

[115] *See generally* Resp.; Resp'ts' Status Update.

Government wished to rely on Petitioner's refusal to accept removal to Mexico as a basis to detain him, it should have invoked Section 1231(a)(1)(C).[116] It didn't.[117]

Resultingly, the Government's authority to detain Petitioner hinges on whether his removal is "significantly likely in the reasonably foreseeable future."[118] In their most recent filing, however, Respondents concede that:

(1) "Petitioner was denied repatriation by the Government of Cuba" as recently as July 5, 2026;[119]

(2) "there is no newly scheduled removal date" for Petitioner;[120] and

(3) the Government is awaiting "guidance regarding third-country removal options."[121]

In other words, there is currently no plan for Petitioner's removal—let alone a plan that would secure his removal in the reasonably foreseeable future.

Section 1231(a)(6) doesn't authorize the Government to detain aliens indefinitely while it looks for a country that will accept their removal.[122] Under these circumstances, Petitioner's detention is unlawful and no longer authorized by statute.[123]

---

[116] *See supra* Section II.C.2.a.

[117] *See supra* Section II.C.1.c.

[118] *See supra* Section II.B.2.

[119] *See* Velez Decl. at 1.

[120] *See id.* at 3.

[121] *See* Resp'ts' Status Update at 1.

[122] *See Zadvydas*, 533 U.S. at 689.

[123] *Id.* at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.").

### D. Scope of Relief

Because Section 1231(a) doesn't authorize Petitioner's continued detention, the Court will order his release.[124] *Zadvydas* counsels that "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances."[125] The Court therefore directs Respondents to release Petitioner under a form of supervised release that is consistent with 8 U.S.C. § 1231(a)(3) and corresponding regulations.[126]

Respondents may continue to facilitate removal while Petitioner is released under supervision.[127] However, Respondents may only:

(1) re-detain Petitioner under the authority of Section 1231(a)(6) in accordance with the procedures set forth under 8 C.F.R. §§ 241.4(*l*), 241.13(i);[128] or

---

[124] *See id.* (contemplating an alien's release where detention is no longer authorized).

[125] *Id.* at 700.

[126] *See* 8 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.").

*See also, e.g.,* 8 C.F.R. § 241.5 ("Conditions of release after removal period"); *id.* § 241.13(h) ("Conditions of release").

[127] Besides seeking his release, Petitioner also requests that the Court "[e]nter a permanent injunction prohibiting Respondents from re-detaining him absent clear and convincing evidence that removal ***to Cuba*** has become imminently feasible." Am. Pet. at 15 (emphasis added). Petitioner, however, cites no authority for the proposition that the Government's detention authority hinges on whether Petitioner's removal to Cuba (as opposed to some third country) is foreseeable. *See generally* Am. Pet. Nor is that request consistent with the Government's authorization to remove aliens to third countries where removal to the alien's home country is "impracticable, inadvisable, or impossible." *See* 8 U.S.C. § 1231(b)(1)(C)(iv). The Court therefore denies this request.

[128] *See* 8 C.F.R. § 241.4(*l*) (identifying the process by which the Government may revoke an alien's OSUP where the alien violates their conditions of release); *id.* § 241.13(i)(3) (identifying the process by which the Government may revoke an alien's OSUP to execute removal).

(2) invoke the authority of Section 1231(a)(1)(C) to detain Petitioner in accordance with the procedures set forth under 8 C.F.R. §§ 241.4(g)(5).[129]

## III. CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner Reinaldo Moreno-Rodriguez has shown by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."[130]

The Court therefore **GRANTS** Petitioner's Amended Petition for a Writ of Habeas Corpus (ECF No. 12) **IN PART**.[131]

The Court thereby **ORDERS** Respondents to **RELEASE** Petitioner from immigration detention **UNDER SUPERVISION** **on or before Saturday, September 26, 2026**.

The Court **FURTHER ORDERS** that Respondents shall notify the Court of Petitioner's release **by 5:00 PM Mountain Time on Monday, September 28, 2026**.

The Court **FURTHER ORDERS** that Respondents may only re-detain Petitioner under the authority of Section 1231(a)(6) in accordance with the procedures set forth under 8 C.F.R. §§ 241.4(*l*), 241.13(i).

The Court **FURTHER ORDERS** that Respondents may only invoke the authority of Section 1231(a)(1)(C) to detain Petitioner in accordance with the procedures set forth under 8 C.F.R. § 241.4(g)(5).

---

[129] *See* 8 C.F.R. § 241.4(g)(5) (setting forth procedures relating to detaining aliens who fail to cooperate with the Government's removal efforts).

[130] *See supra* note 20 and accompanying text.

[131] *See supra* note 127.

Finally, now that Petitioner has obtained the habeas relief to which he is entitled, there appears to be nothing further for the Court to do in this case. The Court therefore **CLOSES** the above-captioned case.

**So ORDERED and SIGNED this 23rd day of September 2026.**

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**